Weygandt, C. J.
This litigation involves but a single question of law.
Under the will of the plaintiff’s husband, was the stock of the Union Savings Bank “specifically bequeathed” within the purview of Section 10509-89, General Code (Section 2113.38, Revised Code)? If so, the widow was not entitled to purchase the requested 400 shares at the appraised value; but if the shares were not specifically bequeathed, she was entitled to purchase them.
Under the provisions of Section 10504-55, General Code (Section 2107.39, Revised Code), the widow elected to take under the statutes of descent and distribution instead of under the will. However, she has the right to purchase certain property in the estate at its appraised value if not specifically devised or bequeathed.
What intention did the testator express in the language he used?
Before attempting to analyze the testator’s language, it is necessary to keep in mind several of the fundamental principles relating to the subject of specific bequests or legacies.
*115 Usually legacies are classified as general, specific or demonstrative. General and specific legacies are of the nature indicated by the terms in their common acceptation. A specific legacy is one which, according to the testator’s intent, is limited to the subject matter given. It has been defined as a bequest of some particular thing or portion of the testator’s estate, which is so described by the will as to distinguish it from other articles of the same general nature in the estate, as a gift of a particular thing or of money specified and distinguished from all things. A specific legacy differs from a general one in that it is not intended by the testator to be paid out of his estate generally but is to be paid solely by delivering to the beneficiary the specific thing given by the will, as distinguished from a designated value. If the object of the legacy ceases to exist, the legacy is adeemed or extinguished. A demonstrative legacy partakes of the characteristics of general and specific legacies in that it is payable primarily out of a particular fund or property upon which it is a charge, but, unlike a specific legacy, it is not subject to ademption; and if the designated source of payment fails, the legacy is payable out of the corpus of the estate in the same manner as a general legacy.
Legacies of a doubtful nature usually are construed as general or demonstrative rather than specific inasmuch as the latter type is subject to ademption in the event the subject matter is disposed of by the testator after execution of the will, a result which is regarded as imposing hardship on the legatees.
It should be noted that certain questions are not involved in this controversy.
The lower courts held and counsel agree that the testamentary trust, of which the bank stock is a part, is valid.
It is agreed, too, that the trust is a charitable one.
*116 Furthermore, it is conceded that the legal title to the estate assets vested in the trustees.
The will is of some length. It extends over 14 pages of the printed record and consists of 14 items. The longest item is number IX which is seven pages in length and is comprised of 19 paragraphs. It is this item in which the trust is created. Because of its length, the item is not here quoted in full.
In the first sentence of the item appears the fact that the bequest is residuary in nature. However, this does not prevent the legacy from being specific.
By his language in item IX the testator confers broad powers on the trustees for a number of purposes. Chief among these are the construction and maintenance of a public library building and a community center building in the city of Bellaire, Ohio, on sites the city must indicate its intention to provide within a period of 10 years which the trustees are authorized to extend to a maximum of 20 years from the date of the testator’s death.
In analyzing the provisions of item IX the Court of Probate listed the following grounds for the conclusion that the testator clearly indicated an intention to specifically bequeath all his Union Savings Bank stock for the purposes named:
“1. The intention of the testator to separate this stock from the balance of his personal property is clearly shown in paragraph 2 of item IX, where there are detailed instructions as to voting for a consolidation or merger of the First National Bank and the Union Savings Bank and where it is specifically directed that the trustees cannot sell or dispose of the shares in these banks ‘except as hereinafter provided.’
“2. The intention is further shown in paragraph 3 providing that if there is a merger of the two banks then the stock may be sold and the income from the proceeds applied to the construction and upkeep of a library building.
*117 “3. In paragraph 4 if a merger is not effected then all of the income from all of the shares of the Union Savings Bank is to be placed by the trustees in the ‘ general fund ’ until the library is constructed and then the income may be used for upkeep.
"4. The library building is authorized in paragraph 8 and specifically authorized is the expenditure of all of the balance in the trust estate, for the construction of a library ‘other than 100 shares of stock in First National Bank and all of my said stock of the Union Savings Bank,’ and further ‘except’ those shares again in the last clause of that paragraph.
“5. It is provided in paragraph 9 that after the library is built, all of the remainder of his estate may be used for a community center building, ‘excepting therefrom 100 shares of the stock of First National Bank in Bellaire, and all of the stock which I may own at the time of my decease in the Union Savings Bank of Bellaire, Ohio.’
“6. It is further provided in paragraph 14, that if there is a surplus after the library and community center building have been constructed the remaining surplus may be used for remodeling and for running expenses, ‘exeepting principal and income from said 100 shares of First National Bank in Bellaire, and all of the shares of the Union Savings Bank.’ And it is further provided in said paragraph that said surplus, ‘other than the above mentioned shares of stock’ may be transferred to the library trustees apd to the city of Bellaire.
“7. It is provided in paragraph 15 that the income from the shares of these stocks shall be paid annually to the board of trustees of the library building for upkeep of said building.
“8. In paragraph 16, the trustees are authorized to transfer said shares to the trustees of the library to be used by said trustees for repair and upkeep of the library.
*118 “9. Other than the trusts set up for Mrs. B. W. Hopkins, the cemetery trust, Mrs. Minnie McNiece and Alice Myers, item IX of the will sets up three separate trusts. One for the library building for which any of the assets except the stocks in these banks may be used; one for the community center building in which all of the assets may be used, except the stocks in these banks; and one for the upkeep of the library which is to be definitely the income from 100 shares of First National Bank stock and all of his stock in the Union Savings Bank.”
A careful study of the provisions of item IX has convinced this court that the analysis by the Court of Probate is correct and that the specific nature of the bequest to the trustees is not changed by reason of the remote possibility that the title may be divested subsequently by failure of the city to provide the necessary building sites within a maximum period of 20 years.
The bank stock, having been specifically bequeathed, is not subject to purchase by the surviving spouse.
The judgment of the Court of Appeals is reversed and that of the Court of Probate is affirmed.

Judgment reversed.

Middleton, Hart, Zimmerman, Stewart and Lamneck, JJ., concur.
Taft, J., concurs in paragraphs two, four and five of the syllabus and in the judgment.